UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISON

CIVIL ACTION NO.  3:18-cv-437-DJH

NAVIGATORS INSURANCE COMPANY                                                    PLAINTIFF

v.

THE UNIVERSITY OF LOUISVILLE FOUNDATION, INC.
Serve: Franklin K. Jelsma, Registered Agent
Wyatt, Tarrant & Combs, LLP
500 W. Jefferson Street, Suite 2800
Louisville, KY 40202

JAMES R. RAMSEY
8902 Adrienne Ct.
Louisville, KY 40245,

KATHLEEN SMITH
3604 Hillcreek Road
Louisville, KY 40220,

BURT DEUTSCH
2017 Lowell Avenue
Louisville, KY 40205,

MICHAEL CURTIN
600 NW 104th Terrace
Kansas City, MO 64154,

and

JASON TOMLINSON
908 Willow Pointe Drive
Louisville, KY 40299                                                                                DEFENDANTS

## COMPLAINT

Plaintiff, Navigators Insurance Company ("Navigators"), for its Complaint against Defendants University of Louisville Foundation, Inc., James R. Ramsey, Kathleen Smith, Burt Deutsch, Michael Curtin, and Jason Tomlinson, states:

## I. PARTIES AND JURISDICTION

1. Plaintiff, Navigators Insurance Company, is a New York corporation with its principal place of business in New York. Navigators is authorized to conduct business in Kentucky.

2. Defendant The University of Louisville Foundation, Inc. ("the Foundation") is a non-profit corporation organized under the laws of Kentucky with its principal place of business in Kentucky.

3. Defendant James R. Ramsey ("Ramsey") is a resident and citizen of Jefferson County, Kentucky.

4. Defendant Kathleen Smith ("Smith") is a resident and citizen of Jefferson County, Kentucky.

5. Defendant Burt Deutsch ("Deutsch") is a resident and citizen of Jefferson County, Kentucky.

6. Defendant Michael Curtin ("Curtin") is a resident and citizen Missouri.

7. Defendant Jason Tomlinson ("Tomlinson") is a resident and citizen of Jefferson County, Kentucky.

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because it involves citizens of different states and the amount in controversy, as described more fully below, exceeds the sum or value of $75,000, exclusive of interest and costs.

9. This Court has jurisdiction to enter a declaratory judgment under Fed.R.Civ.P. 57 and 28 U.S.C. §§ 2201-2202.

## II. GENERAL FACTUAL BACKGROUND

10. Navigators is in the business of, among other things, issuing directors and officers liability insurance policies.

11. Navigators issued Not-For-Profit InNAVation Policy number NY16DOLVBEOAWNV to the Foundation ("the Policy") with a Policy Period from 09/01/2016 to 09/01/2017.

12. Under the Policy, the maximum aggregate Limit of Liability for all Loss, including Costs of Defense, under the Directors and Officers ("D&O") Coverage Part is $10 million. Coverage under the D&O Coverage Part is subject to a $25,000 self-insured Retention for each Claim under Insuring Agreement B. Costs of Defense are part of, and not in addition to, the Limit of Liability.

13. In connection with the underwriting of the Policy, Navigators required the Foundation to complete and sign an "Application for Not-For-Profit Directors and Officers Liability Insurance, Employment Practices Liability Insurance and Fiduciary Liability Insurance" (the "Application").

14. Tomlinson signed and submitted the Application on behalf of the Foundation and other Insureds on August 29, 2016.

15. The Application asked the following Question 7.c., to which Tomlinson answered "no:"

> Does the Applicant or any person in his or her capacity as a director, officer, trustee, or any person responsible for insurance, complaints or claim reporting, have knowledge of any act, error, omission, fact, incident, situation, unresolved dispute or any other circumstance that is or could be the basis for a claim under the proposed insurance policy?

\*   \*   \*

REPORT KNOWLEDGE OF SUCH INCIDENTS TO YOUR CURRENT INSURER PRIOR TO YOUR CURRENT POLICY EXPIRATION.  IT IS UNDERSTOOD AND AGREED THAT ANY CLAIM ARISING OUT OF ANY SITUATION THAT IS OR SHOULD HAVE BEEN REPORTED IN [7.c] ABOVE IS EXCLUDED FROM THE PROPOSED INSURANCE [(the "Knowledge Exclusion")].

16. The DECLARATIONS AND SIGNATURE section of the Application contains the following NOTICE TO APPLICANT:

FOR THE PURPOSES OF THIS APPLICATION, THE UNDERSIGNED AUTHORIZED AGENT OF THE PERSON(S) AND ENTITY(IES) PROPOSED FOR THIS INSURANCE DECLARES THAT TO THE BEST OF HIS/HER KNOWLEDGE AND BELIEF, AFTER FULL INVESTIGATION INQUIRY OF EVERY DIRECTOR, OFFICER, TRUSTEE, OR ANY PERSON RESPONSIBLE FOR INSURANCE, COMPLAINTS OR CLAIM REPORTING, THE STATEMENTS IN THIS APPLICATION AND IN ANY ATTACHMENTS, ARE TRUE AND COMPLETE.  THE INSURER IS AUTHORIZED TO MAKE INQUIRY IN CONNECTION WITH THIS APPLICATION.  ACCEPTING THIS APPLICATION DOES NOT BIND THE INSURER TO PROVIDE, OR THE APPLICANT TO PURCHASE, THE INSURANCE.

17. On April 25, 2018, the Foundation and the University of Louisville filed a Complaint With Jury Trial Demand in an action styled *The University of Louisville and The University of Louisville Foundation, Inc. v. James Ramsey, et al.*, Case No. 18-CI-002385, Jefferson Circuit Court, Commonwealth of Kentucky (the "Lawsuit").

18. The Lawsuit was filed by the Foundation and the University of Louisville (the "University") (together with the Foundation, the "Lawsuit Plaintiffs") against: (1) Ramsey (former President of the University and former President of the Foundation), (2) Tomlinson (former Assistant Treasurer of the Foundation), (3) Curtin (former Assistant Treasurer of the Foundation), (4) Smith (former Assistant Secretary of the Foundation and former Chief of Staff for the University President), (5) Deutsch (former member of the Foundation's Board of

Directors and Executive Committee) (collectively, the "Individual Defendants"), and (6) Stites & Harbison, PLLC (former counsel for the University and the Foundation).

19. The Foundation is a non-profit entity that was established to hold and manage the University's endowment.

20. The Lawsuit Plaintiffs allege that the Individual Defendants knowingly caused the Foundation to spend endowment funds at an excessive and unsustainable rate, while simultaneously authorizing the payment of excessive compensation to Ramsey, Smith, and others associated with the Foundation.

21. According to the Lawsuit, as of 2008, the Foundation had a spending policy that allowed it to spend 7.48% of the fair market value of the University's endowment each year. In 2012, the Foundation's investment advisor—Cambridge Associations—allegedly advised the Foundation that the spending policy was unsustainable and recommended various adjustments, including decreasing the spending percentage to 5.5%. The Lawsuit Plaintiffs have alleged that the Foundation's Finance Committee never considered that recommendation and the Foundation's spending policy remained at 7.48% until 2016. The Lawsuit Plaintiffs further allege that the Foundation's spending rate was much higher than 7.48% because the Individual Defendants artificially inflated the value of the endowment by re-categorizing expenditures as investments and recording fictitious returns. As a result, the Lawsuit Plaintiffs contend, the Individual Defendants substantially depleted the value of the University's endowment.

22. The Lawsuit Plaintiffs allege that the Individual Defendants depleted the endowment by issuing approximately $55 million in loans from the endowment to University Holdings, Inc. ("UHI") for the purpose of investing in real estate and other speculative ventures.

23. The Lawsuit Plaintiffs also allege that the Individual Defendants caused the Foundation to pay excessive compensation to Ramsey, Smith and others.

24. The Lawsuit Plaintiffs allege that, in addition to their base salaries as officers of the University and the Foundation, Ramsey and Smith collectively received over $11 million in deferred compensation through 2016.

25. The Lawsuit Plaintiffs allege that, because that deferred compensation was not included in the Foundation's budget, the Foundation funded that deferred compensation by liquidating certain assets.

26. The Lawsuit Plaintiffs allege that at least some of the deferred compensation payments were never approved by the Foundation's Board or Executive Committee.

27. Navigators has offered to defend Defendants Ramsey, Smith, Deutsch, Curtin, and Tomlinson in the Lawsuit, subject to Navigators having reserved the right to deny coverage for the claims in the Lawsuit, and subject to Navigators having reserved the right to seek rescission of the Policy.

28. Defendants Ramsey, Deutsch, Curtin, and Tomlinson are seeking, from the Foundation, advancement or indemnification for their costs, expenses, and damages from the Lawsuit.

29. If the Foundation pays advancement or indemnification for any or all of the other Defendants, then the Foundation will seek to require Navigators to reimburse those payments under the Policy.

30. All conditions precedent to the relief requested by Navigators have been performed or have occurred.

31. There is an actual controversy existing between the Navigators and the Individual Defendants Navigators' obligations, if any, to provide coverage under the Policy. The Foundation is named as a party to this action in order to answer for any interest that it may claim to have in the outcome of this controversy.

32. Navigators has no adequate remedy at law and this is a proper case for the Court to exercise jurisdiction and declare rights and liabilities of the parties.

## COUNT I - Rescission

33. Navigators incorporates by reference all allegations in the preceding paragraphs as if set forth in full in this paragraph.

34. Section VIII.F. of the General Terms and Conditions of the Policy ("Representations Provision") states:

> It is agreed by the Insureds that the particulars and statements contained in the Proposal Form [(*i.e.*, the Application)] and any information provided therewith (which shall be on file with the Insurer and be deemed attached hereto as if physically attached hereto) are the basis of this Policy and are to be considered as incorporated in and constituting a part of this Policy. It is further agreed by the Insureds that the statements in the Proposal Form or in any information provided therewith are their representations, that they are material and that this Policy is issued in reliance upon the truth of such representations; provided, in the event that the Proposal Form contains misrepresentations made with the actual intent to deceive or contains misrepresentations which materially affect either the acceptance of the risk or the hazard assumed by Underwriters under this Policy, this Policy shall be void and have no effect whatsoever with respect to those Insureds who made or had knowledge of such misrepresentations.

35. Kentucky's "Rescission Statute," K.R.S. § 304.14-110, provides that misrepresentations or omissions in a policy shall not prevent recovery under that policy unless either: (1) the misrepresentations were fraudulent; or (2) the misrepresentations were "material either to the acceptance of the risk, or to the hazard assumed by the insurer;" or (3) "the insurer

in good faith would either not have issued the policy or contract, or would not have issued it at the same premium rate, or would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer…"

36. The Application contains misrepresentations that materially affected the acceptance of the risk or hazard assumed by Navigators under the Policy.

37. At the time the Application was executed, the Foundation and its directors and officers were aware of various acts, errors, omissions, facts, incidents, situations, unresolved disputes or other circumstances that could form the basis of a Claim under the Policy and, in fact, have now given rise to the Lawsuit.

38. On June 25, 2015, Kentucky's Auditor of Public Accounts (the "State Auditor") initiated an examination (the "Examination") of the Foundation. See Mike Harmon, *Examination of the Governance of the University of Louisville Foundation and its Relationship to the University of Louisville* (December 14, 2016) (the "Audit Report").

39. The Foundation's directors and officers were aware of the Examination before the Application was submitted to Navigators.

40. The Audit Report states that, in the course of the Examination, the State Auditor "interviewed over 20 individuals, including both current and former UofL and ULF Board members, the former UofL President, who also served as the ULF President until September 16, 2016, and various other University and Foundation personnel." See Auditor Report at 2.

41. The Audit Report states that the Foundation's board chair specifically requested that the newly-elected State Auditor proceed with the investigation in January 2016 (*i.e.*, approximately seven months before the Application was submitted to Navigators).

42. The Examination resulted from concerns raised in April and May 2015, first by local media and later by University trustees, about the validity of certain deferred compensation, and compensation generally, paid by the Foundation to Ramsey, Smith and others.

43. Upon information and belief, University trustee Steve Wilson sent an email to the State Auditor on April 29, 2015, stating in part that the Foundation's compensation "arrangements … should have been provided to the [University] Board of Trustees in order for us to meet our fiduciary and statutory responsibilities."

44. In his April 29, 2015 email, Mr. Wilson demanded that the State Auditor "conduct a 'truly independent accounting' of the finances of the university and … [the] foundation.…"

45. The Foundation anticipated that these concerns could give rise to a Claim because, at least as early as April 2015, the Foundation retained counsel to address these issues.

46. The Examination concluded in December 2016 with findings that, *inter alia*, Ramsey was compensated beyond the amount authorized by the University and the Foundation. See Audit Report at pp.33-34.

47. The Examination also encompassed an analysis of the Foundation's spending policy. During the Examination, the State Auditor requested a "prudency analysis" from the Foundation.

48. At least as early as May 2016, the Insureds were aware that the Foundation's "unsustainable spending" was the subject of a state Examination.

49. Justin Ruhl (Director of Foundation Accounting Operations) sent a May 10, 2016 e-mail to Tomlinson stating that: (i) the Foundation's "spending policy … is not sustainable in the long term," (ii) the Foundation's spending policy created a "guilty until proven innocent [standard] right from the start," and (iii) the "actual financial health of the Foundation at this

current point is not the same [as] the Leadership's perceived financial health of the entities." ("I'm probably stating the obvious, but our unsustainable spending is not just limited to endowments or ULF. This is a global problem with ULF and ULREF.").

50. In the Application, the Foundation answered "no" to the following question:

> Does the Applicant or any person in his or her capacity as a director, officer, trustee, or any person responsible for insurance, complaints or claim reporting, have knowledge of any act, error, omission, fact, incident, situation, unresolved dispute or any other circumstance that is or could be the basis for a claim under the proposed insurance policy?

51. The Insureds' answer to Question 7.c. was false and/or misleading because it failed to disclose the compensation and spending policy issues that were being investigated by the State Auditor.

52. The Insureds' answer to Question 7.c. was further misleading because the Insureds failed to describe the circumstances surrounding a $38 million loan from the University to the Foundation that was the subject of substantial scrutiny just months before the inception of the Policy.

53. Upon information and belief, a $38 million loan from the University to the Foundation first became the subject of public scrutiny through media reports in May 2016.

54. Following those May 2016 media reports, the University's Board began to increasingly question the loan. For example, during a June 6, 2016 meeting of the Finance Committee of the University Board, board members asked whether it was possible for the University to demand repayment of the loan.

55. During an August 25, 2016 meeting of the University trustees, Larry Benz (a University trustee) publicly stated that he had demanded information from the Foundation about the $38 million loan.

56. On August 29, 2016 (the same day the Application was executed), the Foundation received a letter from Mr. Benz stating that he planned to demand that an independent accounting firm conduct a review of the Foundation and its related entities.

57. The scrutiny surrounding the Foundation and the $38 million loan ultimately led to the following events (all of which occurred within just one month of the inception of the Policy): (1) the September 9, 2016 resolution by the University's board that threatened to sue the Foundation if the Foundation did not share financial records and agree to an audit by an outside accounting firm, (2) the September 15, 2016 resignation of Ramsey from the Foundation, (3) the September 26, 2016 announcement that Smith had been placed "on leave" by the Foundation, and (4) the University's September 26, 2016 request for proposals for a "Special Forensic Audit" relating to the activities and accounts of the Foundation, which was eventually undertaken by Alvaraz & Marsal.

58. Because the circumstances and inquiries surrounding the $38 million loan could have reasonably formed the basis of a Claim, the Insureds' failure to disclose such circumstances and inquiries further render the answer to Question 7.c. false and/or misleading.

59. The Application was also false and/or misleading because it misrepresented the Foundation's financials.

60. Question No. 4 of the Application asked the Foundation to provide, among other things, information about the Foundation's two most recent financial years, *i.e.*, the July 1, 2014 to June 30, 2015 fiscal year ("2014-2015 FY") and the July 1, 2015 to June 30, 2016 fiscal year ("2015-2016 FY").

61. In response to Question 4 of the Application, the Foundation provided the following information:

| 4. | Financial Information | Most recent fiscal year | Prior fiscal year |
|---|---|---|---|
| A. | Total Annual Revenue (grants, donations, membership dues, etc.) | $105,189,921 | $77,653,000 |
| B. | Net Income/Loss | ($132,171,910) | ($46,575,000) |
| C. | Total Assets | $977,722,950 | $1,046,779,000 |
| D. | Fund Balance, Net Assets or Equity* | $704,443,447 | $836,515,000 |
| *If Fund Balance, Net Assets, or Equity is negative, please include the most recent financial statement and an explanation. | | | |
| | | | |

62. On October 27, 2016, the Foundation issued an audited financial statement (the "2016 Audited Financials") for the 2015-2016 FY, which included a restatement of the Foundation's financial results for the 2014-2015 FY. As shown in the following, the financial information in the 2016 Audited Financials for the 2014-2015 Fiscal Year is different from the financial information in the Application:

| | 2014-2015 FY | Application | 2016 Audited Financials | Difference | Percentage Change |
|---|---|---|---|---|---|
| A | Total Annual Revenue (grants, donations, membership dues, etc.) | $77,653,000 | $77,476,000 | -$177,000 | -.20% |
| B | Net Income/Loss | -$46,575,000 | -$46,408,000 | $167,000 | .30% |
| C | Total Assets | $1,046,779,000 | $1,047,442,000 | $663,000 | .06% |

63. The financial information in the 2016 Audited Financials for the 2015-2016 FY is materially different from the financial information in the Application as shown below:

| 64. 2015-2016 FY | | Application | 2016 Audited Financials | Difference | Percentage Change |
|---|---|---|---|---|---|
| A | Total Annual Revenue (grants, donations, membership dues, etc.) | $105,189,921 | $64,188,000 | -$41,001,921 | -39% |
| B | Net Income/Loss | -$132,171,910 | -$107,462,000 | $24,709,910 | 18% |
| C | Total Assets | $977,722,950 | $898,818,000 | -$78,904,950 | -8% |

65. The Application submitted to Navigators on behalf of the Insureds was false and/or misleading because it: (1) failed to disclose the Examination, (2) failed to disclose the public and private scrutiny of the Foundation's compensation structure, spending policy, and $38 million loan from the University, and (3) provided materially inaccurate financial information.

66. If the true facts had been made known to Navigators as required by the Application and Kentucky law, Navigators in good faith would either not have issued the Policy or not have issued it at the same premium rate.

67. The above-described representations to Navigators in the Application were material either to the acceptance of the risk, or to the hazard assumed by Navigators.

68. Navigators is entitled to entry of a judgment declaring that the Policy is void and rescinded *ab initio*.

## COUNT II – Declaration Concerning Coverage

69. Navigators incorporates by reference all allegations in the preceding paragraphs as if set forth in full in this paragraph.

70. Pleading alternatively, if the Policy is not declared void *ab initio*, then the Policy does not provide coverage for the claims in the Lawsuit.

71. The "Insured v. Insured Exclusion" at Section III.H. of D&O Coverage Part provides:

> [Navigators] shall not be liable under this Coverage Part to make any payment for any Loss in connection with any Claim made against any Insured by or on behalf of any Insured or any security holder of the [Foundation]; provided, however, that this exclusion shall not apply to any Claim:
>
> 1. brought by any Insured where such Claim is in the form of a cross-claim or third party claim for contribution or indemnity which is part of and results directly from a Claim which is not otherwise excluded by the terms of this Coverage Section;
>
> 2. brought by any security holder of the [Foundation], whether directly or derivatively, if the security holder bringing such Claim is acting totally independently of, and without the solicitation, assistance, active participation or intervention of, the [Foundation] or any Insured Person;
>
> 3. brought in any bankruptcy proceeding by or against any entity included within the term "Company" by any creditors committee, examiner, trustee, receiver, liquidator or rehabilitator appointed with respect to such entity;
>
> 4. brought by any Insured Person who has neither served in such capacity nor as consultant to any entity included within the term "Company" for at least three (3) years prior to such Claim having been first made;
>
> 5. brought by any Insured Person of any entity included within the term "Company" formed and operating outside the United States of America or any of its territories or possessions against such Company or any Insured Person thereof, if such Claim is brought and maintained outside the United States of America, Canada or any other common law jurisdiction; or
>
> 6. arises out of, is based upon, or is attributable to any whistleblower activity, including but not limited to any such activity protected under the Sarbanes-Oxley Act of 2002, the False Claims Act, or any similar federal, state, local or foreign law or statute.

72. The Lawsuit is a Claim made against Insureds (Ramsey, Tomlinson, Curtin, Deutsch, and Smith) by another Insured (the Foundation).

73. The claims in the Lawsuit are excluded by the Insured v. Insured Exclusion, and none of the six exceptions to the Insured v. Insured Exclusion apply to the Lawsuit.

74. The claims in the Lawsuit are barred from coverage under the Policy pursuant to the Knowledge Exclusion set out in Paragraph 15 above.

75. The Absolute Professional Services Exclusion at Endorsement No. 5 of the Policy states that Navigators will not be liable to make any payment of any Loss in connection with any Claim made against any Insured based upon, arising out of, relating to, directly or indirectly, resulting from, or in any way involving any provision of or failure to provide any professional service.

76. The Lawsuit alleges that the Individual Defendants mismanaged the funds in the University's endowment.

77. The Lawsuit specifically alleges a cause of action based on violations of the Kentucky Uniform Prudent Management of Institutional Funds Act.

78. Because the management and investment of the University's endowment constitutes a professional service, the Absolute Professional Services Exclusion precludes coverage for claims based on violations of the Kentucky Uniform Prudent Management of Institutional Funds Act.

79. The term "Loss" is defined at Section II.N. of the General Terms and Conditions and Section II.E. of the D&O Coverage Part, as amended by Endorsement No. 3, to not include, among other things, any matter which may be deemed uninsurable under the law.

80. Among other things, the Lawsuit seeks to recover the allegedly excessive compensation paid to certain of the Individual Defendants.

81. The return of any actual or alleged excessive compensation would constitute restitution or the disgorgement of an ill-gotten gain, which is uninsurable as a matter of law.

82. Navigators is not liable for any sums reflecting the return of compensation or any other amounts that do not constitute covered or insurable Loss under the Policy.

83. Section III.A.1 of the D&O Coverage Part of the Policy states that Navigators will not be liable under Insuring Agreements A or C to make any payment of any Loss in connection with any Claim made against any Insured brought about or contributed to by the gaining by any Insured of any profit, advantage or remuneration to which such Insured was not legally entitled; provided, however this exclusion shall only apply if it is finally adjudicated such conduct in fact occurred.

84. Navigators will not be liable under Insuring Agreement A of the D&O Coverage Part to the extent there is a final adjudication that any Insured Person gained any profit, advantage or remuneration to which they were not legally entitled.

85. Section III.A.2 of the D&O Coverage Part of the Policy states that Navigators will not be liable under Insuring Agreements A or C to make any payment of any Loss in connection with any Claim made against any Insured brought about or contributed to by the deliberately fraudulent or criminal acts of any Insured; provided, however this exclusion shall only apply if it is finally adjudicated such conduct in fact occurred.

86. Navigators will not be liable under Insuring Agreement A of the D&O Coverage Part to the extent a final adjudication establishes any Insured Person engaged in any deliberately fraudulent or criminal acts.

87. Navigators reserves the right to amend this pleading to allege other coverage defenses.

### COUNT III – Judgment for Reimbursement

88. Navigators incorporates by reference all allegations in the preceding paragraphs as if set forth in full in this paragraph.

89. In the Lawsuit, Navigators is incurring the cost of defending Defendants Ramsey, Smith, Deutsch, Curtin, and Tomlinson.

90. Section VI of the Policy states in part: "If a **Claim** made against any **Insured** includes both covered and uncovered matters, or is made against any **Insured** and others, the **Insureds** and the Insurer recognize that there must be an allocation between **Loss** and uninsured damages, settlement amounts and other liabilities in connection with such **Claim**."

91. Navigators is entitled to a judgment against each Defendant to reimburse Navigators for all money paid by Navigators to defend that Defendant, or to reimburse that Defendant for any advancement or indemnification, for all claims not covered by the Policy.

92. If the Policy is rescinded or coverage for all claims in the Lawsuit is excluded under the terms of the Policy, then Navigators is entitled to a judgment against each Defendant to reimburse Navigators for all money paid by Navigators to defend that Defendant.

WHEREFORE, Plaintiff, Navigators Insurance Company, demands that judgment be entered against Defendants:

1. Declaring that the Policy is void and rescinded;

2. If the Policy is not declared void and rescinded, then declaring that the Policy does not provide coverage for the claims alleged in the Lawsuit;

3. Awarding Navigators a judgment against each Defendant to reimburse Navigators for all money paid by Navigators to defend that Defendant;

4. Awarding Navigators its costs and attorney's fees, if appropriate; and

5. Awarding Navigators any and all other relief to which it may appear entitled.

Respectfully submitted,

s/Robert L. Steinmetz
Robert L. Steinmetz
rsteinmetz@gsblegal.com
Gwin Steinmetz & Baird, PLLC
401 West Main Street, Suite 1000
Louisville, KY  40202
(502) 618-5711 (phone)
(502) 618-5701 (fax)

*Counsel for Navigators Insurance Company*

T:\STEINMETZ\Navigators\UofL Foundation\Complaint - Navigators.doc