UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CIVIL ACTION NO. 3:18-cv-437-DJH

*Electronically Filed*

| | |
|---|---|
| **NAVIGATORS INSURANCE COMPANY** | **PLAINTIFF** |
| v. | |
| **THE UNIVERSITY OF LOUISVILLE FOUNDATION, INC.; JAMES R. RAMSEY; KATHLEEN SMITH; BURT DEUTSCH; MICHAEL CURTIN; and JASON TOMLINSON** | **DEFENDANTS** |
| v. | |
| **R.H. CLARKSON INSURANCE GROUP** | **THIRD PARTY DEFENDANT** |

**AMENDED AND RESTATED THIRD-PARTY COMPLAINT**
**<u>WITH JURY TRIAL DEMAND</u>**

Defendant The University of Louisville Foundation, Inc. (the "Foundation"), pursuant to Rule 15(a)(1)(B), Fed. R. Civ. P., respectfully amends and restates its Third-Party Complaint against Third-Party Defendant R.H. Clarkson Insurance Group ("Clarkson"). In support of this Third-Party Complaint, the Foundation states as follows:

1

## PARTIES

1. The Foundation is a non-profit corporation organized under the laws of the Commonwealth of Kentucky with its principal place of business in Jefferson County, Kentucky. The Foundation works exclusively for the charitable and educational purposes of the University of Louisville (the "University"). The Foundation holds, invests, and designates the University's endowment (the "Endowment").

2. Upon information and belief, Clarkson is a Kentucky business corporation organized under the laws of the Commonwealth of Kentucky with its principal place of business in Jefferson County, Kentucky.

## JURISDICTION AND VENUE

3. This Court has supplemental jurisdiction over these third party claims and venue in this Court is proper pursuant to 28 U.S.C. § 1367 because they forms part of the same case and controversy as the primary claims asserted by Plaintiff Navigators Insurance Company ("Navigators") against the Foundation in this action.

## GENERAL FACTUAL BACKGROUND

4. Clarkson is an insurance brokerage firm that is an agent for Navigators.

5. Richard P. Lewis ("Lewis"), an agent in Clarkson's business insurance team, worked directly with Defendant Jason Tomlinson ("Tomlinson"), the Foundation's assistant treasurer, to draft an insurance proposal for the Foundation on behalf of Navigators.

6. On August 15, 2016, Lewis provided Tomlinson and the Foundation with a proposal for a directors and officers insurance policy underwritten by and on behalf of Navigators.

7. Over the following two weeks, Lewis guided Tomlinson through the application process for Navigators and assisted with the assembly of documents and information for the application. Lewis even drafted the warranties and representations statements for the Foundation to execute as part of the application process with Navigators.

8. After Lewis drafted the original draft of the Foundation's representations and warranties for the application, Tomlinson identified multiple errors in the draft and pointed these errors out to Lewis. Lewis then redrafted the representations and warranties that were submitted to Navigators.

9. Tomlinson, on behalf of the Foundation, completed the remainder of the Foundation's application for directors and officers insurance (those portions not drafted by Lewis) and submitted that application to Clarkson as the agent for Navigators for its review.

10. The Foundation eventually contracted with Navigators, through Clarkson as agent for Navigators, for a directors and officers insurance policy. The Foundation and Navigators entered into an insurance agreement titled Not-For-Profit InNAVation Policy[1] (the "Policy"), effective September 1, 2016. The Policy includes a Directors and Officers Liability Coverage Part (the "D&O Coverage Part") and a Fiduciary Liability Coverage Part issued as part of the Policy.

11. The Policy is a claims-made policy and was in effect at the time of the claims described herein.

*Facts Giving Rise to the Underlying Litigation*

12. As discussed in more detail in the Complaint in the Underlying Lawsuit, during their time controlling the Foundation, the individual Defendants unlawfully mismanaged the Endowment by (i) spending Endowment funds at an excessive and unsustainable rate; (ii) "investing" Endowment funds in speculative ventures, loan, and gifts with no reasonable chance of repayment; (iii) depleting Endowment funds through intentionally complicated and often-unauthorized transactions, (iv) paying themselves excessively from Endowment funds; and (v) disguising and mischaracterizing transactions in order to escape scrutiny and avoid or manipulate the Foundation's spending limits.

---

[1] Policy number NY16DOLVBEOWNV

13. After becoming aware of the wrongful conduct of the individual Defendants, the Kentucky's Commonwealth Auditor began an investigation of the Foundation and the individual Defendants. This investigation garnered media attention in Louisville and resulted in the creation of the Auditor's Report.

14. The Auditor's Report was released to the public on December 14, 2016, and detailed the individual Defendants' wrongdoing and many of the facts related to the claims in the Underlying Lawsuit.

*Disclosure of Potential Claims to Clarkson*

15. After the Auditor's Report had been released, Tomlinson was concerned it could constitute implied or threaten claims under the Policy, notice of which was required to be provided to Navigators.

16. Although the Policy was dated September 1, 2016, the Foundation and Clarkson were still revising and redrafting the Policy after that date. Despite its September 1st date, the Policy remained a work-in-progress subject to revision at that point in time.

17. In September of 2016, Tomlinson discussed the Auditor's Report and the potential implications associated with it with Lewis. Tomlinson disclosed all of the material allegations of the Auditor's Report to Lewis. Tomlinson asked Lewis how the Auditor's Report would affect the Policy and the Foundation's coverage. Tomlinson's disclosures to Lewis and Lewis's guidance to the

Foundation in response were related to both the Navigators' Policy at issue here and the Foundation's excess policy.

18. On September 22, 2016, while Tomlinson and Lewis were still revising the representations and warranties, the application, and other documents related to the Policy, Tomlinson emailed Lewis and asked whether the Auditor's Report and its media coverage constituted a claim under the Policy and noted that "it's obvious from the media that [a claim] has been implied or threaten (sic)." (Tomlinson's email is attached as Exhibit A to the original Third-Party Complaint.)

19. Lewis responded to Tomlinson's email and stated that such threatened claims were "made public after" the date of the Foundation's warranty and representations letters and that no updated or revised warranty or representations letter would be necessary. (Lewis's response email is attached as Exhibit B to the original Third-Party Complaint.)

20. Tomlinson relied on Lewis's response and representations in not revising the warranty and representations letters to Navigators and in providing Navigators with no additional notice of the potential claims associated with the Auditor's Report. The "Foundation's" (more accurately described as "Clarkson's") representations Navigators relies on in its rescission claim were all drafted and approved by Clarkson.

21. Some of the changes Tomlinson requested to Clarkson's original draft of the representations and warranties are what required the Foundation to get its own insurance policies independent from those of the University. This is true for all of the policies at issue in this action and is not just relegated to excess insurance.

*The Underlying Lawsuit*

22. On April 25, 2018, the Foundation (along with the University) filed a civil action[2] against the individual Defendants and various other parties in the Circuit Court of Jefferson County. In the Underlying Lawsuit, the Foundation asserts various claims against the individual Defendants for fraud and breaches of their respective duties to the Foundation related to management of the University's Endowment. (The Complaint in the Underlying Lawsuit is attached as Exhibit C to the original Third-Party Complaint.)

23. On May 9, 2018, the University and the Foundation filed their First Amended Complaint, which added a claim for declaratory relief against the individual Defendants. (The First Amended Complaint in the Underlying Lawsuit is attached as Exhibit D to the original Third-Party Complaint.)

---

[2] *The University of Louisville, et al. v. James R. Ramsey, et al.*; civil action no. 18-CI-002385 in the Jefferson Circuit Court, Division Nine (the "Underlying Lawsuit").

24. On May 11, 2018, the University and the Foundation formally put Navigators on notice of the claims arising from the Underlying Lawsuit and provided Navigators with a copy of the First Amended Complaint.

25. Any liability the individual Defendants have to the University or the Foundation falls within the insurance coverage provided under the D&O Coverage Part of the Policy.

26. The Foundation and the University complied with all notice requirements under the Policy related to the claims arising through the Underlying Lawsuit.

*Navigators Main Claims*

27. Navigators instituted this action essentially requesting the Court declare Navigators has no liability to the Foundation for any of the claims arising from the Underlying Lawsuit.

28. In particular, Navigators seeks rescission of the Policy or a judicial declaration that Navigators has no liability to the Foundation related to the claims in the Underlying Lawsuit. Navigators seeks this relief based on its allegations that the Foundation had knowledge of the claims in the Underlying Lawsuit through the Auditor's Report and related investigation but failed to disclose them to Navigators and failed to properly disclose certain financial data about the Foundation. *See*, *e.g.*, Compl. ¶ 36 ("The Application contains misrepresentations

8

that materially affected the acceptance of the risk or hazard assumed by Navigators under the Policy.") (doc 1).

29. The Complaint goes on to allege that the "knowledge exclusion" of the Policy purportedly precludes any coverage because Tomlinson failed to disclose the potential claims that were the subject of the Auditor's Report in the Foundation's application for the Policy. *See* Compl. ¶¶ 15, 74 ("The claims in the [Underlying] Lawsuit are barred from coverage under the Policy pursuant to the Knowledge Exclusion set out in Paragraph 15 above.").

30. Both of Navigators's allegations are a direct result of the Foundation's reliance on Clarkson's representations that Tomlinson received from Lewis.

### COUNT I
### FRAUD

31. The Foundation incorporates by reference all of the allegations in the preceding paragraphs as if fully set forth herein.

32. Clarkson, as Navigators' agent, voluntarily drafted the representations and warranties section of the Foundation's application for the Policy. The application, the Policy, and documents related to it drafted by Clarkson were subject to revision and were actually revised beyond the Policy's effective date of September 1, 2016. In spite of this effective date, the documents remained a "work in progress" during this time period.

9

33. Tomlinson, on behalf of the Foundation, affirmatively asked Lewis if the allegations made in the Auditor's Report and through the investigation culminating in the Auditor's Report constituted a threatened or implied claim that required disclosure to Navigators.

34. Lewis, as an agent of Clarkson, instructed Tomlinson that the Foundation was not required to make such a disclosure.

35. Clarkson made a material representation to the Foundation through Lewis's instruction that the Foundation need not disclose the findings of the Auditor's Report or investigation to Navigators.

36. Clarkson also materially represented to the Foundation that all of the representations and warranties Lewis had drafted, including those related to the Foundation's finances, were sufficient for the Policy.

37. While the email correspondence attached as Exhibits A and B to the original Third-Party Complaint are demonstrative of Lewis's involvement in the drafting of the application and related documents, the communications between Lewis and Tomlinson (and the representations made therein) were much more extensive, both oral and written, and are not confined to such demonstrative exhibits.

38. If Navigators successfully avoids coverage of the claims arising from the Underlying Lawsuit, then Clarkson's material representations were false. Even

if Navigators is unsuccessful in avoiding coverage, the mere fact that they have made such allegations suggests that Clarkson's material representations were false.

39. Clarkson made these material representations while either knowing they were false or with reckless disregard for whether they were true or false. Upon information and belief, Clarkson undertook no independent inquiry to determine the veracity of its material representations before making them to the Foundation.

40. Clarkson made these material representations with inducement that the Foundation act upon them.

41. The Foundation relied on Clarkson's material representations and did not further revise or supplement its disclosures with the substantive allegations of the Auditor's Report in its application to Navigators for the Policy.

42. Clarkson's material representations and the Foundation's reliance upon them resulted in injury to the Foundation in the form of Navigators' filing of this action and attempted avoidance of coverage of the claims arising from the Underlying Lawsuit.

WHEREFORE, the Foundation requests the Court enter a judgment against Clarkson for compensatory and punitive damages and for any other relief to which it is entitled.

## COUNT II
## NEGLIGENCE

43. The Foundation incorporates by reference all of the allegations in the preceding paragraphs as if fully set forth herein.

44. Clarkson voluntarily assumed a legal duty to the Foundation by drafting the Foundation's representations and warranties and application for the Policy.

45. Clarkson had a legal duty to exercise due diligence in determining whether Navigators required disclosure of the substantive allegations of the Auditor's Report by the Foundation. At a minimum, this legal duty was created when the Foundation, through Tomlinson, affirmatively asked Lewis, as Clarkson's agent, whether disclosure was appropriate and Lewis took the affirmative of action of answering in the negative and instructing the Foundation to make no supplemental disclosure.

46. Clarkson failed to conform to its legal duty.

47. Clarkson's failure to conform to its legal duty caused the Foundation to be injured by the filing of this action by Navigators and by Navigators' attempted avoidance of coverage of the claims in the Underlying Lawsuit.

48. The Foundation was actually injured by Clarkson's failure.

WHEREFORE, the Foundation requests the Court enter a judgment against Clarkson for compensatory and punitive damages and for any other relief to which it is entitled.

## DEMAND FOR TRIAL BY JURY

The Foundation hereby demands a trial by jury on all issues so triable.

                                            Respectfully submitted,

                                            /s/ *Jeremy S. Rogers*
                                            Jeremy S. Rogers

**OF COUNSEL**

Andrew P. Campbell (*pro hac vice* to be filed)
Stephen D. Wadsworth (*pro hac vice* to be filed)
A. Todd Campbell (*pro hac vice* to be filed)
Cason M. Kirby (*pro hac vice* to be filed)
CAMPBELL GUIN, LLC
505 20th Street North, Ste. 1600
Birmingham, AL 35205
Telephone: (205) 224-0750

R. Kenyon Meyer
Jeremy S. Rogers
DINSMORE & SHOHL LLP
101 S. Fifth Street, Suite 2500
Louisville, Kentucky 40202
(502) 540-2300 Telephone
(502) 585-2207 Facsimile


*Counsel for the Foundation*

13

## **CERTIFICATE OF SERVICE**

   I hereby certify that on this the 29th day of October, 2018 I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Robert L. Steinmetz
Gwin Steinmetz & Baird, PLLC
401 West Main Street, Suite 1000
Louisville, KY 40202
rsteinmetz@gsblegal.com
*Counsel for Plaintiff*

Ann B. Oldfather
R. Sean Deskins
OLDFATHER LAW FIRM
1330 South Third Street
Louisville, KY 40208
aoldfather@oldfather.com
sdeskins@oldfather.com
nbush@oldfather.com
*Counsel for Defendant, Kathleen Smith*

Lisa Fauth
Casey Bailey & Maines, PLLC
3151 Beaumont Centre Cir., Suite 200
Lexington, KY 40513
lfauth@cbmlaw.net
*Counsel for the Third-Party Defendant, R.H. Clarkson Insurance Group*

Donald L. Cox
Matthew P. Cox
Lynch, Cox, Gilman & Goodman, P.S.C.
500 W. Jefferson Street, Suite 500
Louisville, KY 40202
doncox@lynchcox.com
mcox@lynchcox.com
*Counsel for Defendants, Burt Deutsch, Michael Curtin, and Jason Tomlinson*

Stephen B. Pence
Pence & Whetzel, PLLC
9300 Shelbyville Road, Suite 1205
Louisville, KY 40223
steve@pencelegal.com
*Counsel for Defendant James R. Ramsey*

/s/ Jeremy S. Rogers
Jeremy S. Rogers
 *Counsel for the Foundation*